IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **SHERRIE Y. DAY,** | ] |
| | ] |
| **Plaintiff,** | ] |
| | ] |
| v. | ] CV-09-BE-0269-NE |
| | ] |
| **SOCIAL SECURITY** | ] |
| **ADMINISTRATION, Commissioner** | ] |
| *Michael J. Astrue*, | ] |
| | ] |
| **Defendant.** | |

**MEMORANDUM OPINION**

**I.  Introduction**

The claimant, Sherrie Day, filed applications for Disability Insurance benefits and Supplemental Security Income payments on February 13, 2006.  Ms. Day alleged disability commencing on February 13, 2004 because of fibromyalgia, arthritis, bulging discs in her back and neck, osteoporosis, lupus, depression, and bipolar disorder.  The Commissioner denied the claims.  The claimant filed a timely request for a hearing before an Administrative Law Judge.  The ALJ held a hearing on January 8, 2008.  In a decision dated February 28, 2008, the ALJ found that the claimant was not disabled within the meaning of the Social Security Act, and therefore, was not eligible for Disability Insurance benefits and Supplemental Security Income payments.  On December 12, 2008, the Appeals Council denied the claimant's request for review.  The claimant has exhausted her administrative remedies, and this court has jurisdiction under 42 U.S.C. § 405(g) and 1631(c)(3).  For the reasons stated below, the court will affirm the decision of the Commissioner.

## II.  Issue Presented

In this appeal, the claimant argues that the ALJ erred when he rejected the medical opinion of Ms. Day's treating and examining physicians and instead accorded significant weight to the consultative state agency's opinion.

## III.  Standard of Review

The standard for reviewing the Commissioner's decision is limited.  This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if his factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).  "No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999.  This court does not review the Commissioner's factual determinations *de novo*, but will affirm those factual determinations that are supported by substantial evidence.  "Substantial evidence" is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual finding." *Walker*, 826 F.2d at 999.  A reviewing court must not only look to those parts of the record that support the decision of the ALJ, but must also view the record in its entirety and take account of evidence that detracts from the evidence on which the ALJ relied. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

## IV.  Legal Standard

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1520, 416.920.

This court's limited review precludes reweighing evidence anew. Nevertheless, the ALJ must state with particularity the weight given different medical opinions and the reasons therefor, and the failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). The Commissioner may reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

The testimony of a treating physician must be given substantial or considerable weight unless "good cause" to the contrary exists. *Crawford v. Commissioner*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause to discount a treating physician's report exists where the report is 1) not accompanied by

objective medical evidence, 2) wholly conclusory, or 3) contradicted by other medical evidence. *See Crawford v. Commissioner*, 363 F.3d at 1159; *Jones v. Dept. of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991). The opinion of a non-examining physician does not constitute good cause needed to reject a treating physician's opinion. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

State agency consultants are experts in social security disability evaluation. 20 C.F.R. § 416.927(f). They consider the evidence of record to make findings of fact regarding the existence and severity of the claimant's impairments and symptoms, and the claimant's residual functional capacity. The ALJ must consider findings of state agency medical consultants as medical opinion evidence. However, the ALJ need not consider the consultant's ultimate determination about whether the claimant is disabled. *See id.* A state agency consultant's opinion might be entitled to great weight if the opinion is supported by the evidence in the record. *See* Social Security Ruling 96-6p, 1996 WL 374180 (S.S.A. 1996).

## V.  Facts

The claimant was forty-six years old at the time of the administrative hearing and has a high school education. (R. 35). Her past work experience includes employment as a twisting machine operator, an industrial cleaner, and a furniture assembler. According to the claimant, she became disabled on February 13, 2004 because of major depression with panic disorder; borderline intellectual functioning; and degenerative changes, joint disease, and osteoporosis of the spine. At her administrative hearing, Ms. Day testified that she has had rheumatoid arthritis since childhood. She stated that she had depression and daily panic attacks, has a problem with concentration, can only stand for about fifteen minutes and also has a problem sitting.

Additionally, Ms. Day testified that she could not grip things without dropping them and cannot make a fist with her hand. She also complained of back pain. Since her alleged disability onset date, Ms. Day has not engaged in substantial gainful activity.

In May 1999, Ms. Day was hospitalized for about five days at the Carraway Methodist Medical Center (CMMC) for dysthymia with major depression, anxiety disorder, and chronic pain syndrome. During her hospital stay, she repeatedly complained of fibromyalgia and rheumatoid arthritis. In claimant's discharge summary, Dr. Jerry Howell noted that Ms. Day's Global Assessment of Functioning (GAF) score was "probably around 35" and "[t]he best the patient has done this year is probably around 55." (R. 206). On March 4, 11, and 18, 2004, Ms. Day received lumbar epidural steroid injections for her back pain. (R. 239-49). From December 4, 2004 through May 9, 2006, Dr. Mark Murphy of North Alabama Pain Management prescribed and authorized refills of Lortab to treat Ms. Day's back pain. (R. 295-331).

Dr. Marlin Gill performed a consultative examination for the Social Security Administration on January 14, 2004. (R. 575-77). Dr. Gill concluded, "I think the patient has some significant limitations and the joint problems combined with her psychiatric difficulty is significant. I think it is doubtful that she is going to function in a normal work environment." (R. 577).

Dr. John Haney, a consultative examining psychologist for the Social Security Administration, concluded in June 2006 that Ms. Day had recurrent, moderate to severe major depressive disorder. (R. 361). He regarded all of Ms. Day's statements as truthful. Dr. Haney opined that Ms. Day's ability to function in most jobs appeared moderately to severely impaired because of her physical and emotional limitations. (R. 361). He noted that Ms. Day's "condition

will likely remain unchanged in the next six to twelve months."

On June 28, 2006, Dr. Richard Whitney, a state agency consultant, reviewed the evidence of record as of that date, including Dr. Murphy's treatment records. (R. 393-402). Dr. Whitney opined that Ms. Day retained the capacity to occasionally lift and carry fifty pounds; frequently lift and carry twenty-five pounds; sit and stand/walk six hours during an eight-hour day; occasionally climb ladders, ropes, and scaffolds with limited overhead reaching, fingering, and handling. (R. 395). He found that Ms. Day should avoid work at unprotected heights and around dangerous machinery.

In January 2008, Dr. Murphy, Ms. Day's treating physician from at least November 2003, completed Physical Capacities Evaluation, Clinical Assessment of Pain, and Clinical Assessment of Fatigue/Weakness forms drafted by claimant's attorneys. (R. 440-44). By making the corresponding marks on the forms, Dr. Murphy indicated that Ms. Day could lift no more than twenty pounds, sit for four hours, and be on her feet for two hours. (R. 440). Further, Dr. Murphy noted that Ms. Day could occasionally push and pull, climb stairs, bend, stoop and reach. (R. 440). Dr. Murphy also determined that Ms. Day could frequently perform fine and gross manipulation. (R. 440). Additionally, Dr. Murphy circled an answer choice indicating that Ms. Day experiences distracting levels of pain and fatigue from daily activities or work. (R. 441).

The ALJ found that the medical evidence indicated that the claimant had a history of major depression with panic disorder; borderline intellectual functioning; and moderate and mild degenerative changes, moderate joint disease, and osteoporosis of the spine. (R. 14). The ALJ stated that these impairments were severe, but not severe enough to meet one of the impairments listed in 20 C.F.R. pt. 404, subpart P, app.1. (R. 16). Ms. Day did not allege that her impairments

met or equaled a listed impairment and the ALJ stated that claimant's position was consistent with the evidence in the record.

Next, the ALJ determined Ms. Day's residual functional capacity (RFC).  In making his determination, the ALJ stated that he considered all of Ms. Day's symptoms and the extent to which those symptoms can reasonably be accepted as consistent with the objective medical evidence.  The ALJ also consider the medical opinion evidence.

In considering Ms. Day's symptoms, the ALJ applied the pain standard.  Ultimately, the ALJ determined that Ms. Day's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with his RFC assessment.  In her appeal, Ms. Day does not challenge the ALJ"s application of the pain standard to her objective symptoms.

As to the medical opinion evidence, the ALJ stated that he had given little weight to the Physical Capacities Evaluation, Clinical Assessment of Pain, and Clinical Assessment of Fatigue/Weakness forms completed by Dr. Murphy and listed three reasons for doing so. (R. 19). First, the ALJ gave little weight to these documents because the medical records do not show that Dr. Murphy assessed Ms. Day's impairments; instead, the records show that he prescribed medicine and treated Ms. Day for her complaints of pain. (R. 19).  Second, the ALJ stated that Ms. Day's *medically determinable* impairments–major depression with panic disorder; borderline intellectual functioning, and moderate and mild degenerative changes, moderate joint disease, and osteoporosis of the spine– are not consistent with the limitations opined by Dr. Murphy. (R. 19).  Finally, the ALJ stated that the record contains no definite diagnosis of rheumatoid arthritis, despite the fact that Dr. Murphy lists this as one of Ms. Day's problems. (R. 19).

The ALJ gave Dr. Haney's opinion some, but not great weight. (R. 19). The ALJ stated that Dr. Haney examined Ms. Day on only one occasion. Additionally, the ALJ noted that Dr. Haney indicated that Ms. Day is moderately to severely impaired because of physical and emotional limitations; however, the ALJ pointed out that Dr. Haney is not a medical doctor and therefore he was not qualified to give an opinion regarding Ms. Day's *physical* limitations. (R. 19-20).

On the other hand, the ALJ gave significant weight to Ms. Day's non-treating state agency consultant. (R. 20). The ALJ stated that he gave greater weight to the consultative opinion because of the consistency between the opinion and the objective record. (R. 20)

After considering the evidence of Ms. Day's symptoms and the medical opinion evidence, the ALJ determined that Ms. Day could perform a limited range of medium work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). (R. 17). The ALJ found that Ms. Day is restricted from climbing ladders, ropes, and scaffolding. (R. 17). He determined that while Ms. Day is restricted from *constant* overhead reaching, she is able to frequently reach overhead. Additionally, the ALJ found that Ms. Day can frequently perform fingering and handling involving gross and fine motor manipulation. (R. 17). The ALJ concluded that Ms. Day is restricted from working at unprotected heights or around dangerous machinery. She is restricted to unskilled work and limited to simple, short instructions and is able to concentrate and persist for periods up to two hours. (R. 17).

The ALJ next assessed whether the claimant retained the residual functioning capacity to perform the requirements of her past relevant work as an industrial cleaner. (R. 20). In comparing Ms. Day's RFC to the physical and mental demands of being an industrial cleaner, the

ALJ found that Ms. Day is able to perform her past relevant work as an industrial cleaner. (R. 20). During the claimant's hearing, the ALJ posed a hypothetical situation to the vocational expert based on his findings of the claimant's RFC. (R. 73-74). The VE stated that, based on the RFC described by the ALJ, the claimant could return to her past relevant work as an industrial cleaner. (R. 74).

Alternatively, the ALJ found that if Ms. Day were only able to perform light exertional work with the additional limitations described in her RFC, Ms. Day would be capable of performing jobs that exist in significant numbers in the economy. (R. 20). The VE testified that if Ms. Day's RFC were reduced to include only light work, with the other restrictions remaining the same, Ms. Day would still be able to perform the following jobs that exist in significant numbers in the national economy: maid, mail sorter, or counter clerk. (R. 75).

## VI.  Discussion

In disagreeing with the ALJ's disability determination, Ms. Day argues that the ALJ erred in rejecting treating and examining medical opinions and according significant weight to the state agency opinion. The weight afforded to a medical source's opinion on the issue of the nature and severity of a claimant's impairments depends on the medical source's examining and treating relationship with the claimant, the evidence the medical source presents to support his opinion, how consistent the opinion is with the record as a whole, the specialty of the medical source, and other factors. *See* 20 C.F.R. § 404.1527(d), 416.927(d); SSR 96-2p, 1996 WL 374188 (S.S.A.). The opinion of a physician, even a treating physician, may be discounted when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole. *See Phillips v. Barnhart*, 357 F.3d 1232, 1240-

41 (11th Cir. 2004); *Crawford*, 363 F.3d at 1159-60; SSR 96-2p.

In making her argument, Ms. Day first references the ALJ's decision to give little weight to the opinion of her treating physician, Dr. Mark Murphy, and significant weight to the assessment of the state agency medical consultant, Dr. Richard Whitney. However, a review of the evidence supports the ALJ's decision.

Dr. Murphy's medical records cover his treatment of Ms. Day from November 5, 2003 through January 16, 2008. (R. 294-355, 438-573). As noted by the ALJ, these records indicate that Dr. Murphy managed Ms. Day's pain by prescribing and monitoring Ms. Day's medication. (R. 15). On January 2, 2008, Dr. Murphy completed a physical capacities evaluation for Ms. Day. He concluded that Ms. Day had the ability to lift and/or carry twenty pounds occasionally and ten pounds frequently; sit four hours and stand or walk two hours in an eight-hour day; frequently perform gross and fine manipulation; and occasionally push and pull, bend, stoop, and reach. (R. 440). On the prepared form, Dr. Murphy also indicated that Ms. Day should not work around hazardous machinery, dust, allergens, or fumes. (R. 440).

In according little weight to Dr. Murphy's opinion, the ALJ noted that Dr. Murphy never assessed Ms. Day's impairments, but merely prescribed medication and treated her for her complaints of pain. (R. 19). Therefore, the ALJ found Dr. Murphy's opinion was based on Ms. Day's subjective complaints of pain. (R. 19). Subjective complaints alone cannot establish disability; instead, the record must include medical signs and findings that show the existence of a medical impairment that, when considered with all the other evidence, would lead to a conclusion that the claimant was disabled. 42 U.S.C. § 423(d)(5)(A); *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991); 20 C.F.R. §§ 404.1529(a), 416.929(a). Here, such signs and

findings of a medical impairment were not present.

Also, the ALJ noted that Ms. Day's medically determinable impairments were not consistent with the limitations opined by Dr. Murphy. (R. 19). On multiple medical records, Dr. Murphy noted that Ms. Day had a history of rheumatoid arthritis. (R. 296, 297, 305, 307-08, 311). However, the ALJ observed that the record documented no blood work, objective evidence, or definite diagnosis of rheumatoid arthritis from any medical source of record. (R. 18-19). In fact, the ALJ left the record open for Ms. Day's counsel to submit additional evidence to support her allegations of rheumatoid arthritis since childhood. (R. 59-60, 77). However, Ms. Day's counsel never submitted such evidence. Thus, a finding that Ms. Day's alleged rheumatoid arthritis was a medically determinable impairment would not have been based on substantial evidence. Accordingly, the ALJ did not err in discrediting Dr. Murphy's notation that Ms. Day had a history of rheumatoid arthritis and finding that her alleged rheumatoid arthritis was not a medically determinable impairment.

As to Dr. Murphy's completion of the functional limitations forms, which he completed six days before Ms. Day's hearing, the ALJ discredited his opinion because the limitations described by Dr. Murphy were inconsistent with the evidence documenting Ms. Day's medically determinable impairments. (R. 14, 18). Additionally, Dr. Murphy's assessment of Ms. Day's functional limitations was wholly conclusory. Moreover, opinions on whether a claimant is disabled and the claimant's RFC are not medical opinions but, instead are opinions on issues reserved for the ALJ. 20 C.F.R. §§ 404.1527(e), 416.927(e). Thus, the ALJ was not required to afford significant weight to Dr. Murphy's opinions even though Dr. Murphy had treated Ms. Day for years.

Ms. Day also claims that the ALJ should not have accorded significant weight to Dr. Whitney's consultative opinion. In according significant weight to the opinion of state agency consultant, Dr. Richard Whitney, the ALJ pointed out that state agency consultants are experts in social security disability programs and an ALJ must consider their findings of fact about the nature and severity of an individual's impairments. (R. 20). Ultimately, the ALJ concluded that, considering the totality of the medical record and the consistency of Dr. Whitney's findings with the objective medical record, he should give Dr. Whitney's opinion significant weight.

The record is replete with medical evidence showing that Ms. Day suffers from *mental* impairments; however, Ms. Day has not presented medical evidence documenting *physical* limitations that would prevent her from working. As to Ms. Day's subjective complaints about her physical impairments, the ALJ discredited her testimony as to the persistence and severity of her symptoms. Accordingly, the ALJ found that considering the *credible* evidence of record, Ms. Day has the residual functional capacity to perform her previous work as an industrial cleaner despite her mental and physical impairments. Alternatively, the ALJ found that Ms. Day could perform light work as a maid, mail sorter, or counter clerk.

Ms. Day has not presented nor has the court found any reason consistent with the applicable standard of review to disturb the ALJ's findings. Even if Ms. Day or the court disagrees with the ALJ's resolution of the factual issues, and would resolve those disputed factual issues differently, his decision must be affirmed where, as here, substantial evidence supports the decision. *See Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005).

## VII. Conclusion

For the reasons stated above, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be AFFIRMED.

DONE and ORDERED this 31st day of March, 2010.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE